**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: February 13 2012

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 09-38083 |
| | ) | |
| Kristina Pietras, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 10-3124 |
| | ) | |
| Kristina Pietras, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| U.S. Department of Education, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### ON MOTION FOR DEFAULT JUDGMENT

This adversary proceeding is before the court upon Plaintiff's complaint to determine the dischargeability of debt under 11 U.S.C. § 523(a)(8) ("Complaint") [Doc. #1]. Plaintiff is the debtor in the underlying Chapter 7 case. Although four defendants are named in the Complaint, National Collegiate Trust is the only defendant remaining, the other three having been previously dismissed.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under Title 11. This proceeding has been referred to this court by the

district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

On July, 2, 2010, the Clerk issued an alias summons and notice of pre-trial conference ("Summons") [Doc. # 7]. The return on service [Doc. # 10] shows that the Summons and Complaint were duly and properly served on Defendant National Collegiate Trust ("Defendant"), having been sent to the address set forth in Plaintiff's petition by certified United States Mail. The Summons required an answer or other response to the Complaint to be filed by August 2, 2010.

On August 24, 2010, the court held the pre-trial conference on the Complaint as set in the Summons. Plaintiff's attorney appeared in person. There was no appearance by or on behalf of Defendant and no answer or other response to the Complaint had been filed by Defendant. The Clerk entered Defendant's default, [Doc. # 15], and Plaintiff filed a Motion for Default Judgment ("Motion") on September 7, 2010.[1] [Doc. # 34]. The court scheduled a hearing on the Motion and notice of this hearing was also properly served on Defendant at the address set forth in Plaintiff's petition. [Doc. ##37, 38].

On November 8, 2010, the court held the hearing on the Motion. Plaintiff's attorney appeared in person. There was no appearance by or on behalf of Defendant. Plaintiff offered testimony and other evidence in support of the Motion. A review of the record shows that no answer or other response to the Complaint or Motion has been filed.

## FINDINGS OF FACT

The court finds that notice, including the service of the Summons and Complaint and of the hearing on the Motion, has properly been given to Defendant. Service of the Summons and Complaint was duly and properly effected under Rule 7004(e)(1) of the Federal Rules of Bankruptcy Procedure and Rules 4.2(F) and 4.3 of the Ohio Rules of Civil Procedure. *See In re Estate of Popp*, 94 Ohio App. 3d 640, 651 (1994) ("service is proper in cases where the Civil Rules on service are followed, unless rebutted by sufficient evidence"). In further support that actual notice of these proceedings have been received by Defendant, the court notes that no notices or mailings to Defendant from the court have been returned to the Clerk. Thus, the court finds that Defendant has failed to appear, plead, or otherwise defend this action as required by the applicable rules of procedure.

---

[1] Plaintiff's motion is for default judgment against both The Education Resources Institute ("TERI") and National Collegiate Trust. [Doc. # 34]. However, at the hearing, Plaintiff's counsel informed the court that TERI no longer holds any loans owed by Plaintiff, and it was subsequently dismissed from this adversary proceeding.

2

The well-pleaded factual allegations of the Complaint are taken as true as a result of the default. In addition, the court takes judicial notice of the contents of the docket in Debtor's underlying bankruptcy case, including Debtor's bankruptcy schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it). The court also takes judicial notice of the contents of the docket in the adversary proceeding filed by Debtor's parents in their bankruptcy case in this court before Judge Speer. [*See* Adv. Pro. No. 10-3169]. In that proceeding, Debtor's parents also filed a complaint against National Collegiate Trust seeking a dischargeability determination with respect to her mother's obligation as co-signer of the same student loans at issue in this case. [*See id.*, Doc. # 1]. National Collegiate Trust appeared in that proceeding and tendered a defense at trial. [*See id*; Doc. # 50]. Finally, the court has considered Plaintiff's testimony offered at the hearing, which further supports allegations in the Complaint.

Plaintiff is twenty-seven years old. She is a single mother of two children, ages 6 and 1. She incurred student loans while pursuing a bachelors degree in business technology management and criminal justice at the University of Toledo. She completed approximately two years of school but left school in 2007 due to mental health issues. Plaintiff testified that she experiences severe anxiety and panic attacks and finds it very difficult to be around people. She is being treated with medications by a psychiatrist that she sees every three to four weeks. Plaintiff testified that her mental impairment has interfered with her ability to maintain employment due to her need to take time while at work to deal with her anxiety and panic attacks.

Since leaving school in 2007, Plaintiff has held minimum wage jobs, the longest stretch being employment at Arby's where she worked for approximately eighteen months, working twenty hours per week. Plaintiff's bankruptcy Schedule I indicates that she was laid off from work at Arby's at the time she filed her petition. [Case No. 09-38083, Doc. 1, p. 28/55]. However, since filing her petition and after her second child was born, she obtained employment at an assisted living facility, where she is currently working twenty-five hours per week and earning $8.25 per hour. At this rate, Plaintiff's gross monthly income is approximately $894.00. She is not a state tested nursing assistant but, according to Plaintiff, simply assists the residents with their "everyday needs." Plaintiff also receives child support payments in the amount of $360.00 per month, as well as food stamps and medicaid. Thus, her total gross monthly

income is $1,254.00, or $15,048.00 per year.

Although Plaintiff has lived for periods of time with her parents or with her former in-laws, she is now living independently with her two children and paying monthly rent in the amount of $450.00. She testified that her expenses also include a monthly electric utility expense of $75.00 and a monthly telephone expense of $60. Plaintiff's Schedule J shows additional expenses of approximately $400.00 for food, clothing, laundry and transportation. [*Id.* at 29/55]. Plaintiff's schedules show minimal assets valued at only $803.00. [*See id.*, Schedule B, pp. 9-12/55]. Although not included in her schedules, Plaintiff testified that she drives an older model car, a 1999 Chrysler Town and Country.

At the time of filing, Plaintiff's debts included only unsecured, nonpriority debt in the total amount of $192,182.74, which amount includes the $109,167.00 student loan debt that Plaintiff seeks to discharge. [*Id.*, Schedule F, pp. 15-25/55]. In the adversary proceeding commenced by Plaintiff's parents, Judge Speer entered a Decision and Order on September 7, 2011, finding that Defendant holds the three notes that comprise the student loan debt at issue in this case and that the amount and outstanding balance owed on each is as follows:

> Note No. 1, incurred on May 12, 2006, in the amount of $32,349.72. Outstanding balance of $44,714.33.
>
> Note No. 2, incurred on August 4, 2006, in the amount of $31,642.62. Outstanding balance of $44,792.52.
>
> Note No. 3, incurred on July 20, 2007, in the amount of $32,349.72. Outstanding balance of $42,498.68.

[Adv. Pro. No. 10-3169, Doc. # 53, Decision and Order, p. 3]. Thus, as of September 7, 2011, the total amount owed on Plaintiff's student loan debt owed to Defendant was $132,005.53. The loans at issue are not government guaranteed loans; they are private student loans. Plaintiff testified that she has made no payments on the loans but has kept in contact with Defendant and has applied for deferment or forbearance due to hardship. She further testified that she believes the loans are currently in forebearance.

Plaintiff filed her Chapter 7 petition for relief on November 20, 2009. The order of discharge in the bankruptcy case was entered on March 24, 2010.

## LAW AND ANALYSIS

Plaintiff seeks to discharge her student loan debt based upon the "undue hardship" exception to nondischargeability of such debt in 11 U.S.C. § 523(a)(8). Section 523(a)(8) provides for the

4

dischargeability of a student loan obligation if "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents. . . ." The underlying purpose of this provision is "to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436-37 (6th Cir. 1998).

Although the Bankruptcy Code does not define "undue hardship," the Sixth Circuit has adopted the test set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987), for determining the existence of "*undue* hardship." *See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005).

Under the *Brunner* test, the debtor must prove each of the following three elements:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at 385 (quoting *Brunner*, 831 F.2d at 396). In applying the three prongs of *Brunner,* courts may consider, among other things, the following factors:

(1) the debt amount; (2) the interest rate; (3) the debtor's claimed expenses and current standard of living to evaluate whether the debtor has attempted to minimize expenses; (4) the debtor's income, earning ability, health, education, dependents, age, wealth, and professional degrees; and (5) whether the debtor has attempted to maximize income by seeking or obtaining employment commensurate with her education and abilities."[2]

*Id.* A debtor seeking an undue hardship discharge bears the burden of proof by a preponderance of the evidence. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 443 (Bankr. N.D. Ohio 2003).

The first prong of the *Brunner* test contemplates that a debtor is first entitled to provide for basic needs for food, clothing, shelter, medical care and transportation for herself and her dependents, if any, before repaying student loan debts. Plaintiff has satisfied her burden with respect to this prong. Her income, including child support, is only $15,048.00 per year, which is well below the 2012 Department of Health and Human Services Poverty Guidelines for a family size of three. 77 Fed. Reg. 4034-02, 4035 (Jan. 26, 2012). The expenses listed by Plaintiff and those regarding which she testified are necessary to maintain

---

[2] Before the *Oyler* decision, the Sixth Circuit treated these factors as distinct and independent from the *Brunner* analysis. *See, e.g., Hornsby*, 144 F.3d at 437. But in *Oyler*, the court recognized that the *Brunner* analysis "subsumes" the criteria it had previously analyzed independently and formally adopted the "simpler rubric of the *Brunner* test." *Oyler*, 397 F.3d at 385.

a very minimal standard of living. The court notes that she lists only $15.00 per month for medical and dental expenses and $25.00 per month for clothing for herself and two children, with no expense for auto insurance, child care, or recreation. There is no question that, at her current level of income, Plaintiff cannot service the $132,005.53 student loan obligation owed to Defendant. She and her family are living in poverty.

Under the second prong of the *Brunner* test, a debtor's financial adversity is required to be more than a temporary state of affairs. *Hatfield v. William D. Ford Federal Direct Consolidation Program (In re Hatfield)*, 257 B.R. 575, 582 (Bankr. D. Mont. 2000); *see also Hornsby*, 144 F.3d at 437 ("Courts universally require more than temporary financial adversity. . . "). A debtor must show additional circumstances indicating that her distressed state of financial affairs is likely to persist for a significant portion of the repayment period. *Oyler*, 397 F.3d at 386. "Such circumstances must be indicative of a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" *Id.* (citing *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993)); *Carnduff v. U.S. Dept. of Educ. (In re Carnduff)*, 367 B.R. 120, 129 (B.A.P. 9th Cir. 2007) (equating a "certainty of hopelessness" with a showing of "exceptional circumstances, *strongly suggestive* of continuing inability to repay over an extended period of time). Although a debilitating medical condition is such a circumstance frequently present in successful "undue hardship" cases, it is not a prerequisite to satisfying the second prong of the *Brunner* test. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 445 (Bankr. N.D. Ohio 2003). Other factors that may constitute additional circumstances include, among other things, a maximized income potential in the debtor's chosen educational field and the lack of any more lucrative job skills. *See Oyler*, 397 F.3d at 385 (stating that most courts conceptualize the inquiry regarding a debtor's attempt to maximize income as "the controlling aspect of *Brunner's* second prong"); *Nys v. Educ. Credit Mgmt. Corp.*, 308 B.R. 436, 442 (B.A.P. 9th Cir. 2004).

As long as the debtor can demonstrate some circumstance that makes it unlikely that she will be able to pay her student loans for a significant portion of the repayment period, the second prong of the *Brunner* test has been satisfied. *Chime*, 296 B.R. at 445; *Alderete v. Educational Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1205 (10th Cir. 2005). Implicit in this requirement is that the debtor's financial state be the result of events which are clearly out of the debtor's control. *Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162, 167 (Bankr. N.D. Ohio 2002). Thus, the debtor must establish that she has taken all steps possible to improve her financial situation. *Id.* This requirement thus gives effect to the clear congressional intent – exhibited by the use of the word "undue" in § 523(a)(8) – that a student loan

obligation be more difficult to discharge than other nonexcepted debts. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1088-89 (9th Cir. 2001).

In this case, Plaintiff is currently employed, working only twenty-five hours per week. Although Plaintiff suffers from an anxiety disorder and panic attacks that has, at least to some extent, interfered with her ability to work, the record is insufficient to find that her condition prevents her from working a full-time schedule. Thus, in making a determination under the second prong of *Brunner*, the court assumes Plaintiff can improve her financial situation by finding full-time employment. Nevertheless, even assuming Plaintiff's ability to work full time, the court finds that Plaintiff's circumstances demonstrate by a preponderance of the evidence more than a present inability to meet her student loan obligations.

The court finds Plaintiff's future earning potential to be limited, as shown by her testimony regarding other jobs that she has held, which included only minimum wage jobs. In her current position at the assisted living facility, she is earning only $8.25 an hour. While more than minimum wage, the court does not believe her earning potential will materially exceed this rate of earnings. Thus, attributing this rate of earnings to full-time employment, the court will assume additional annual income of $6,400.00, or approximately $533.00 per month. This, together with her current gross monthly income of $1,254.00, would result in gross monthly income of approximately $1,787.00. While certainly an improvement over her current financial situation, the court must still consider realistic expenses and Plaintiff's resulting ability to pay on her student loans.

In determining reasonable expenses, the court has considered national standards for allowable living expenses developed by the Internal Revenue Service to help determine a taxpayer's ability to pay a delinquent tax liability. *See* Internal Revenue Service, U.S. Dept. of the Treasury, Collection Financial Standards, *available at* http://www.irs.gov/individuals/article/0,,id=96543,00.html. "Allowable living expenses include those expenses that meet the necessary expense test," which in turn is defined as "expenses that are necessary to provide for a taxpayer's (and his or her family's) health and welfare and/or production of income." *Id.* Pursuant to these standards, monthly housing and utility expenses in Lucas County, Ohio, other living expenses,[3] as well as operating expenses for one automobile, total $2,869.00 for a family of three. The court finds that even considering the full-time wages that Plaintiff should earn in the future, such

---

[3] Living expenses other than housing and transportation are included in the "National Standards for Allowable Living Expenses" and include food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. *See* Internal Revenue Service, U.S. Dept. of the Treasury, Collection Financial Standards, *available at* http://www.irs.gov/individuals/article/0,,id=96543,00.html.

expenses, which represent a very basic standard of living, can not be met. The court thus concludes that Plaintiff will not be able to maintain a minimal standard of living if forced to repay her student loans.[4] The court also notes that Plaintiff's imputed monthly income of $1,787.00 is gross income, which will, of course, be reduced by any federal, state and local taxes that she must pay. The court finds that Plaintiff's limited future earning potential is an additional circumstance indicating that her future financial situation will not likely permit repayment of her student loan debt while maintaining a minimum standard of living. Thus, Plaintiff has met her burden under the second prong in *Brunner.*

Under the third prong, a debtor must demonstrate that she has made a good faith effort to repay the loans. In this case, Plaintiff has made no payments on her student loan obligations. Nevertheless, this fact alone does not automatically foreclose a finding of good faith. The good faith requirement does not mandate that payments must have been made when the debtor's circumstances made such payment impossible. *See Alston v. U. S. Dept. of Educ. (In re Alston)*, 297 B.R. 410, 414 (Bankr. E.D. Pa. 2003). There is no question that Plaintiff has been unable to make payments on her student loan debt. However, she did not ignore her obligations. Rather, she maintained contact with Defendant and has filed for deferment or forbearance, which, she testified, she has received. And as her loans are private loans that are not held by the Secretary of Education or guaranteed under any federal program, she is not eligible to participate in programs such as the income contingent repayment or income based repayment programs. *See Foust v. The Education Resources Institute (In re Foust)*, 342 B.R. 384 (Table), 2006 WL 751383, *3, 2006 Bankr. LEXIS 410, *18 (B.A.P. 6th Cir. March 24, 2006) (stating that loans that were neither government subsidized nor insured by the United States Department of Education were not eligible for the income contingent repayment program). Finally, this is not the kind of case, about which Congress has expressed particular concern, where a debtor obtains an education and then seeks to discharge the associated liabilities while the prospect of the increased financial benefits of the education are just over the horizon. Plaintiff left school due to mental health issues, which persist, and has not obtained a degree. With continued panic and anxiety attacks that cause her to "freak out" in uncontrolled situations around people, the court is persuaded that she presents no reasonably

---

[4] In *Hornsby*, 144 F.3d at 437, the Sixth Circuit directed bankruptcy courts to look at other factors that may be appropriate in a particular case. This court considers the impact of potential forced collection by the creditor on the debtor's circumstances a relevant factor in the undue hardship analysis. *See also Barron v. Texas Guaranteed Student Loan Corp. (In re Barron)*, 264 B.R. 833, 841, 42 (Bankr. N.D. Tex. 2002)(court evaluates impact of forced collection as part of second prong of *Brunner* test). Plaintiff does not have assets that could be seized to repay her loans. But if she obtains full-time employment, which the court expects and assumes that she will for purposes of its analysis, Defendant would ultimately be permitted to garnish some portion of her wages. *See* Ohio Rev. Code § 2329.66(A)(13). Such a reduction in her anticipated take home pay would further impair Plaintiff's ability to maintain even the most basic standard of living.

foreseeable probability of a college degree to improve her financial circumstances on the horizon. The court finds that Plaintiff has demonstrated good faith.

In light of the foregoing, the court finds that Plaintiff has met her burden of demonstrating an undue hardship under § 523(a)(8).

**THEREFORE,** for the forgoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment be, and hereby is, **GRANTED** as to Defendant National Collegiate Trust, its predecessors, successors and assigns. A separate judgment on the Complaint effecting this Memorandum of Decision will be entered by the court.